**THE BOUKER NO. 3. THE P. R. R. NO. 35. BOUKER CONTRACTING CO. v. PENNSYLVANIA R. CO.**

(District Court, E. D. New York. May 13, 1924.)

1. Collision ⬅136—Libelant held entitled to demurrage while in dry dock, though additional repairs made.

If vessel goes to dry dock for repairs after collision, and while there owner makes additional repairs, which require more time than that necessary for collision repairs, owner is entitled to demurrage for time required to make collision repairs.

2. Collision ⬅129—Allowance for coal consumed while ship in dry dock held erroneous.

Allowance for coal consumed by injured ship while in dry dock *held* erroneous, where testimony showed that firemen were laid off and no one could swear that any coal was used.

In Admiralty. Libel by the Bouker Contracting Company, as owner of the steam tug Bouker No. 3, against the steam tug P. R. R. No. 35; the Pennsylvania Railroad Company, claimant. On exceptions to reports of commissioner. Exceptions overruled in part, and sustained in part.

Foley & Martin, of New York City, for libelant.

Burlingham, Veeder, Masten & Fearey, of New York City (Ralph W. Brown, of New York City, of counsel), for claimant.

GARVIN, District Judge. By exceptions to the report of a commissioner is raised the following question:

[1] If a vessel goes to dry dock for repairs after a collision, and, while there, the owner makes additional repairs, which require more time than that necessary for the collision repairs, is the owner entitled to demurrage?

The commissioner has allowed demurrage for detention during repairs necessitated by the collision, and no more. Claimant contends that, because libelant took advantage of the vessel's stay in dry dock to have other repairs made, requiring additional time, no demurrage should be allowed. The vessel was in dry dock for 40 days, 15 of which, in addition to 1 day for a survey, were required for the collision repairs, as found by the commissioner. He has also found upon conflicting testimony, that the other repairs were not necessary when made.

---

In this case the ship was not laid off for the latter repairs; they might, in fact, never have been required. The collision brought about a condition where the boat's time was lost to her owners. For the loss of that time it seems reasonable that they should be compensated, and should not be penalized because they concluded to take advantage of the condition for which they are not responsible and make additional repairs at a time when they would not have been made, except for the accident. If repairs necessitated by an accident required 10 days, and during 2 days of that time the owner had other desirable, but not necessary, repairs made, it would not be argued, I think, that the owner's claim for demurrage would be any less than 10 days.

Assume that, after the boat went to dry dock, following an accident, it developed that, in addition to the part affected by the accident, two other parts were in such condition that repairs would be advisable, but not immediately required, the length of time for the two latter being a little less than the former, but of such a character that both could receive attention at the same time: It seems reasonable to hold that the owner might repair one of the latter parts during the collision repairs without losing his claim to demurrage, and the other later, at his own expense, of course. There seems to be no difference in principle between that case and the case at bar, in which event the exception upon this point should be overruled.

It is also contended that the demurrage allowed exceeded the actual loss sustained. It appears from the record that the damaged vessel could earn $600 per day for its owner. Demurrage was allowed at the rate of $235.30 per day. The claimant urges that there should have been allowed an amount equivalent to the fair and reasonable charter hire on bare boat basis ($112.50), plus a reasonable allowance for wages and keep of crew actually retained during the period of repairs.

[2] Most serious objection is made to a substantial allowance for coal. It is asserted, and not denied, that the only testimony regarding coal consumed was as follows:

"Q. Could you state, if possible, about how much coal was consumed over there? Could you give me about what it would be, all told, if you have any idea of it? A. Well, I imagine about half the consumption when running. ⁕ ⁕ ⁕

"Q. Mr. Acheson, did you have any fires under your boilers when she was in the repair yard? A. I could not absolutely swear to that. It seems to me we must have had. I was not over there to see that we did."

Furthermore, the testimony shows that the firemen were laid off. If this be the fact, it is difficult to perceive upon what basis any allowance for coal consumed there could have been, and I see no escape from the conclusion that it must be disallowed.

Exceptions overruled in part, and sustained in part. Settle order on notice.